HARRINGTON, FOXX, DUBROW & CANTER, LLP
KEVIN P. McNAMARA, State Bar No. 180690
1055 West Seventh Street, 29th Floor
Los Angeles, California 90017-2547
Telephone (213) 489-3222
Facsimile (213) 623-7929
kmcnamara@hfdclaw.com

Attorneys for Defendant DIONEX
CORPORATION LONG TERM
DISABILITY PLAN

# UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARMINDA Y. MADRID,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>DIONEX CORPORATION LONG TERM DISABILITY PLAN,<br><br>　　　　Defendant. | CASE NO. CV 07-02839 CRB<br><br>Action Filed: May 31, 2007<br>Assigned to Hon. Charles R. Breyer<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DIONEX CORPORATION LONG TERM DISABILITY PLAN'S MOTION FOR SUMMARY JUDGMENT**<br><br>[Filed Concurrently with Notice of Manual Filing Administrative Record in Support of Defendant's Motion for Summary Judgment and [Proposed] Order Granting Motion for Summary Judgment]<br><br>**Date:**　　February 29, 2008<br>**Time:**　　10:00 a.m.<br>**Ctrm:**　　8 |

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

## I.   INTRODUCTION AND SUMMARY OF ARGUMENT

This lawsuit involves a claim for long term disability ("LTD") benefits under an employee welfare benefit plan established by plaintiff's employer, Dionex Corporation. The benefit plan is insured by Reliance Standard Life Insurance Company ("Reliance Standard"), which also serves as the Plan's Claims Review Fiduciary. The parties are in agreement that the claims in this lawsuit are governed by the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001, et seq.

Plaintiff Arminda Madrid's claim for long term disability benefits was approved and she received benefits from the Plan for 24 months. However, the Plan contains two separate limitations that apply to Ms. Madrid's claim. First, plaintiff has been diagnosed with bipolar disorder, depression and anxiety. These conditions fall squarely within the 24 month limit for Mental or Nervous Disorders. Second, plaintiff has also been diagnosed with Fibromyalgia and Chronic Fatigue Syndrome. The Plan also limits to a maximum of 24 months claims based on "Self Reported Conditions," Chronic Fatigue Syndrome and musculoskeletal or connective tissue disorders other than the ones specifically identified in the Plan. These limitations apply to plaintiff's claim and limit benefits to a maximum of 24 months. Since plaintiff has already received 24 months of benefits, she is not entitled to further benefits under the Plan.

As the Plan's designated Claims Review Fiduciary, Reliance Standard is vested with discretionary authority to determine eligibility for benefits. Accordingly, this Court's review is under the deferential arbitrary and capricious standard. Here, the standard of review truly does not matter. Under the plain language in the Plan, plaintiff has exhausted all benefits available to her. Accordingly, defendant Dionex Corporation Long Term Disability Plan is entitled to judgment in its favor.

///
///
///
///

## II. STATEMENT OF FACTS

### A. Plaintiff's Background

Plaintiff was employed as a Payroll Manager at Dionex Corporation from January 2, 2001 until May 30, 2001. (AR 76). At the time she stopped working, plaintiff was fifty years of age. (AR 76). Plaintiff stopped working and applied for disability benefits shortly after being diagnosed with "hypertension/ fibromyalgia/ depression/anxiety." (AR 71-85). Based on the medical records, the claim was approved.

### B. Relevant Policy Provisions

Under the terms of the Policy insuring the Dionex Plan, benefits are payable for the first 24 months of a claim if the participant "cannot perform the material duties of his/her regular occupation." (AR 11). After 24 months, a claimant must be totally disabled from "any occupation." There are other terms in the Plan that limit benefits to 24 months for certain claims. The Plan contains a limit on benefits for a total of 24 months for "Mental or Nervous Disorders," "Self-Reported Conditions" and certain musculoskeletal and connective tissue disorders. (AR 22).

The Plan's Mental or Nervous Disorders limitation states as follows:

> **MENTAL OR NERVOUS DISORDERS:** Monthly Benefits for Total Disability *caused by or contributed to by mental or nervous disorders* will not be payable beyond an aggregate lifetime maximum duration of twenty-four (24) months unless the Insured is in a Hospital or Institution at the end of the twenty-four (24) month period. The Monthly Benefit will be payable while so confined, but not beyond the Maximum Duration of Benefits…

(AR 21)(emphasis added). The Plan identifies a list of conditions which are specifically included in the "Mental or Nervous Disorders" limitation. (AR 21). These include:

HARRINGTON, FOXX, DUBROW & CANTER, LLP
1055 WEST SEVENTH STREET, 29TH FLOOR
LOS ANGELES, CALIFORNIA 90017-2547
TELEPHONE (213) 489-3222

   (1)  bipolar disorder (manic depressive syndrome);

   (2)  schizophrenia;

   (3)  delusional (paranoid) disorders;

   (4)  psychotic disorders;

   (5)  **depressive disorders**;

   (6)  **anxiety disorders**;

   (7)  somatoform disorders (psychosomatic illness);

   (8)  eating disorders; or

   (9)  mental illness.

(AR 21).

  Benefits under the Plan are also limited to a total of 24 months for disabilities that are caused or contributed to by "Self-Reported Conditions," Chronic Fatigue Syndrome and musculoskeletal and connective tissue disorders "of the neck and back, including any disease, disorder, sprain, and strain of the joints and adjacent muscles of the cervical, thoracic and lumbrosacral regions and their surrounding soft tissue," other than ones that are specifically identified. (AR 22). The term "Self-Reported Conditions" is defined to include "those conditions which, when reported by the Insured's Physician, cannot be verified using generally accepted standard medical procedures and practices. Examples of such conditions include, but are not limited to, headaches, dizziness, fatigue, loss of energy, or pain." (AR 22).

  **C.**  <u>**Claim History**</u>

  In her application for disability benefits, plaintiff stated that she was unable to work due to "severe headaches, aches and pains all over my body, fatigue, insomnia and depression." (AR 80). Plaintiff's treating physicians diagnosed her with hypertension, fibromyalgia, depression and anxiety. (AR 72, 84). In his July 10, 2001 evaluation report, Bruce Fabric, M.D. identified plaintiff's primary diagnoses as bipolar disorder, depression, general anxiety disorder and obsessive compulsive disorder. (AR 622-624). Throughout the duration of her claim, plaintiff's treatment included

psychotherapy and psychotropic medication. (AR 532-533). However, plaintiff has not accepted some of these diagnoses and instead believes that all of her problems are physical in nature.

In a letter dated December 29, 2003, Reliance Standard informed plaintiff that she was not eligible for benefits after 24 months based on the limitations stated in the Policy. (AR 128-130). Plaintiff disagreed with this decision and submitted an administrative appeal on April 19, 2004. (AR 64-70). In her appeal letter, plaintiff asserted that her diagnoses of depression, anxiety and bipolar disorder were *not* the bases of her disability claim and, therefore, benefits should not be limited to the Mental or Nervous Disorder limitation. (AR 64-70). Rather, plaintiff argued that her disability is based entirely on "Fibromyalgia Syndrome." (AR 64-70).

After reviewing plaintiff's appeal, Reliance Standard concluded that its decision to deny further benefits was correct. (AR 46-52). Contrary to plaintiff's belief that her entire disability is caused by Fibromyalgia, nothing contained in her records contradicts her own physicians' diagnoses of depression and anxiety, and nothing refutes Dr. Fabric's diagnoses of bipolar disorder, depression, general anxiety disorder and obsessive compulsive disorder. (AR 622-624). Moreover, based on the language in the Mental or Nervous Disorders limitation, even if depression and anxiety were symptoms of Fibromyalgia as claimed by plaintiff, the limitation would still apply.

Even accepting plaintiff's argument that her disability is caused solely by Fibromyalgia, benefits for this condition are also limited to 24 months under the Plan under the musculoskeletal and connective tissue disorder limitation, as well as the Self-Reported Conditions limitation. (AR 22). No matter which way plaintiff's claim is analyzed, each condition is subject to a 24-month limitation. (AR 21-22). Therefore, in a letter dated August 23, 2004, Reliance Standard upheld its previous decision to discontinue benefits. (AR 46-52).

/ / /

/ / /

## III.  SUMMARY JUDGMENT STANDARD

Under Federal Rule of Civil Procedure 56(c), summary judgment should be entered when the pleadings, depositions, and affidavits demonstrate that no genuine issue of material fact exists and that the movant is entitled to judgment in its favor as a matter of law. Fed.R.Civ.P. 56(c). Factual disputes that are irrelevant or unnecessary are not material. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). The party seeking summary judgment must show that there is an absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Once this burden is met, the burden then shifts to the non-movant to show that a genuine issue of material fact does exist. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986). When the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue of material fact for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986).

## IV.  ERISA STANDARD OF REVIEW

Where, as in this case, an ERISA plan vests the plan fiduciary with discretionary authority to determine benefit eligibility, courts review a decision to deny coverage for abuse of discretion. *See Bendixen v. Standard Ins. Co.*, 185 F.3d 939, 942 (9th Cir. 1999). A plan must unambiguously provide discretion to the plan fiduciary, or else the default standard of review is *de novo*. *Kearney v. Standard Ins. Co.*, 175 F.3d 1084, 1090 (9th Cir. 1999)(en banc). Where a plan fiduciary has discretion, a motion for summary judgment provides the "conduit" for bringing the issue before the court. *Bendixen*, 185 F.3d at 942. The Policy in this case contains an explicit grant of discretionary authority to Reliance Standard as Claims Review Fiduciary to interpret the Policy and the Dionex LTD Plan, and to make decisions on eligibility for benefits. (AR 14). Accordingly, the abuse of discretion standard of review applies to this court's review.

/ / /

HARRINGTON, FOXX, DUBROW & CANTER, LLP
1055 WEST SEVENTH STREET, 29TH FLOOR
LOS ANGELES, CALIFORNIA 90017-2547
TELEPHONE (213) 489-3222

As explained by the Ninth Circuit, it is primarily the job of plan fiduciaries to evaluate a claimant's eligibility for benefits:

> When [courts] review for abuse of discretion, it is because the plan has put the locus for decision in the plan administrator, not in the courts, so [courts] cannot substitute [their] judgment for the plan administrator. [Courts] can set aside the administrator's discretionary determination only when it is arbitrary and capricious. . . . [A] decision grounded on any reasonable basis is not arbitrary and capricious and . . . in order to be subject to reversal, an administrator's factual findings that a claimant is not totally disabled must be clearly erroneous.

*Jordan v. Northrop Grumman Corp. Welfare Benefit Plan*, 370 F.3d 869, 875 (9th Cir. 2004) (internal quotations omitted).

ERISA plan fiduciaries abuse their discretion only when they "render decisions without any explanation . . . construe provisions of the plan in a way that conflicts with the plain language of the plan . . . or `rely on clearly erroneous findings of fact in making a benefit determination.'" *Bendixen*, 185 F.3d at 944 (quoting *Taft v. Equitable Life Assur. Soc'y*, 9 F.3d 1469, 1473 (9th Cir. 1993)). Under the arbitrary and capricious standard a denial of benefits can only be overturned if the court is left with "a definite and firm conviction that a mistake has been committed." *Taft*, 9 F.3d at 1472.

A court reviewing a plan fiduciary's interpretation of the administrative record does not decide whose interpretation is most persuasive but instead decides "whether the plan administrator's interpretation is reasonable." *Clark v. Wash. Teamsters Welfare Trust*, 8 F.3d 1429, 1432 (9th Cir. 1993). As long as the plan's decision has a rational basis, the court may not substitute its own judgment for that of the plan fiduciary even if the court would have reached a different decision under *de novo*

review. *Taft*, 9 F.3d at 1472. "The mere fact that the plan administrator's decision is contrary to some evidence in the record does not show that the decision is clearly erroneous." *Snow v. Standard Ins. Co.,* 87 F.3d 327, 331 (9th Cir. 1996), *overruled on other grounds by Kearney, supra*.

The abuse of discretion standard of review applies even when the defendant is acting under a conflict of interest. *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 965 (9th Cir. 2006)(overruling *Atwood v. Newmont Gold Co.*, 45 F.3d 1317 (9th Cir. 1995)). An insurer who acts as both the decision maker and the funding source for benefits operates under a structural conflict of interest. *Id*. Under this situation, the court considers the conflict as a factor in deciding whether the defendant abused its discretion. *Id.* at 968-69. When there is a technical conflict of interest unaccompanied by evidence of something more, the court will apply a low level of skepticism to the decision. *Id*. at 968. On the other hand, greater skepticism is warranted when the structural conflict of interest is accompanied by shifting explanations for denial, evidence of malice, self-dealing, failure to adequately investigate or when the defendant fails to ask the plaintiff for necessary evidence, or fails to credit a claimant's reliable evidence. *Id*.

## V. RELIANCE STANDARD'S CLAIM DECISION WAS ENTIRELY REASONABLE AND NOT AN ABUSE OF DISCRETION

In order for plaintiff to prevail, she must prove that the Plan abused its discretion when it discontinued disability benefits after 24 months. *See Bendixen,* 185 F.3d at 942. She cannot meet this burden. As stated above, an ERISA claim fiduciary abuses its discretion only if it (1) renders a decision without explanation; (2) construes provisions of the plan in a way that conflicts with the plain language of the plan, or (3) relies on clearly erroneous findings of fact. *Boyd v. Bell/Rozell NFL Players Retirement Plan*, 410 F.3d 1173, 1178 (9th Cir. 2005). While plaintiff may continue to have complaints which are caused by her psychiatric disorders and Fibromyalgia, she

has already been compensated for the aggregate lifetime maximum duration of 24 months as set forth in the Policy. (AR 21-22). She is simply not entitled to benefit payments beyond 24 months based on *any* of her diagnoses and, as there are no genuine issues of material fact left for trial, Dionex LTD Plan's motion for summary judgment should be granted.

### A. Mental or Nervous Disorders

Reliance Standard acted reasonably and well-within its discretion when it concluded that plaintiff's claim was subject to the Policy's 24 month Mental or Nervous Disorder limitation. Plaintiff's claim file contains an abundance of medical evidence from plaintiff's own physicians that support the conclusion that a Mental or Nervous Disorder was her *primary* disabling condition. (AR 72, 80, 84, 622-624). Under the plain language of the Policy, plaintiff is not entitled to benefits beyond 24 months because her disability was "caused by or contributed to by" a Mental or Nervous Disorder. (AR 22).

The Policy takes the language quoted above one step further and specifically identifies depression, anxiety and bipolar disorder as falling within its classification of a Mental or Nervous Disorder. (AR 22). On her application for long term disability benefits, and *in her own words*, plaintiff stated that she is unable to work due to "severe headaches, aches and pains all over my body, fatigue, insomnia *and depression*." (AR 80). On her applications for disability benefits, plaintiff's treating physician verified that she was unable to work due in part to *depression and anxiety*. (AR 72, 84). Further, the July 10, 2001 evaluation report of Bruce Fabric, M.D., identifies plaintiff's *primary diagnoses* as bipolar disorder, depression, general anxiety disorder and obsessive compulsive disorder. (AR 622-624).

There is absolutely nothing in plaintiff's records to refute the diagnoses of Dr. Fabric, her own treating doctor, except for plaintiff's own lay statement that Dr. Fabric's diagnosis was "insulting." (AR 109). It simply cannot be disputed that plaintiff's treatment has included psychotherapy and psychotropic medication. (AR

532-533). Since substantial evidence exists to support a finding that plaintiff's disability was "caused by or contributed to by mental or nervous disorders," Reliance Standard's decision to apply the 24 month limitation was not "clearly erroneous." *Snow*, 87 F.3d at 331; *and see Michaels v. Equitable Life Assurance Society*, No. 04-cv-3250, 2007 WL 3024571 (E.D. Pa. Oct. 15, 2007)("Because such evidence exists to support a finding that Plaintiff's disability 'arose from' or on account of his mental condition, Aetna's decision to apply the 24-month limitation was not arbitrary and capricious."); *and Martinez v. Pacific Gas & Elec. Co.*, No. 1:05-cv-00931, 2006 WL 3349565 (E.D. Cal. Nov. 15, 2006)(court upheld termination of plaintiff's benefits after 24 months based on a "mental/nervous limitation").

Reliance Standard's conclusion regarding the effect of mental illness on the disability is corroborated by the report of Kevin P. Hayes, M.D. (AR 457-466) Dr. Hayes is Board Certified in Psychiatry, and reviewed plaintiff's records at the request of Reliance Standard. Dr. Hayes noted that in the year prior to claiming disability, plaintiff treated with a psychotherapist and with antidepressants. (AR 463). After she stopped working, her doctors diagnosed her with bipolar disorder, anxiety disorder and obsessive-compulsive disorder. (AR 464). However, plaintiff refused to take her medications related to these conditions, refusing to accept her doctors' diagnoses of mental illness. (AR 464). Soon she discontinued treatment with her psychiatrist.

Dr. Hayes concluded that plaintiff suffers from bipolar disorder and noted that her complaints of anxiety and insomnia are "hallmarks of bipolar disorder." (AR 464). Based on the severity of her "significant mood disorder" Dr. Hayes believed that plaintiff was unable to work. (AR 465). The doctor noted, however, that plaintiff blamed Fibromyalgia for her symptoms and denied having a primary psychiatric condition.

According to plaintiff, any mental or nervous disorders were related to Fibromyalgia. This position is refuted by the opinion of her own doctor, Dr. Fabric. However, even if true, plaintiff still could not base her claim for benefits on these

HARRINGTON, FOXX, DUBROW & CANTER, LLP
1055 WEST SEVENTH STREET, 29TH FLOOR
LOS ANGELES, CALIFORNIA 90017-2547
TELEPHONE (213) 489-3222

conditions. Under the plain language in the Plan, benefits are not payable after 24 months for a disability that is "caused by or contributed to by" a Mental or Nervous Disorder. Therefore, whether plaintiff's symptoms of depression, anxiety and bipolar were related to Fibromyalgia or entirely separate, they still cannot be relied on by plaintiff in support of her disability claim as she already received 24 months of benefits related to them.

Under the federal common law of ERISA, courts will "interpret terms in ERISA insurance policies in an ordinary and popular sense as would a person of average intelligence and experience." *Padfield v. AIG Life Ins. Co.,* 290 F.3d 1121, 1125 (9th Cir. 2002). *See also Babikian v. Paul Revere Life Ins. Co.,* 63 F.3d 837, 840 (9th Cir. 1995). A person of average intelligence and experience would have little difficulty recognizing that plaintiff's diagnoses of depression, anxiety and bipolar disorder are specifically identified in the list of Mental and Nervous Disorders and, therefore, subject to the 24 month limit. (AR 21-22).

### B. Fibromyalgia

Contrary to the opinion of one of her own physicians, plaintiff claims that she is disabled due to a physical condition – Fibromyalgia. Significantly, even if true, this condition is subject to a separate 24 month limitation, barring plaintiff from receiving additional benefits. Fibromyalgia is "an ill-defined, poorly understood set of symptoms, consisting of aching pain and stiffness in one or several parts of the body." *Jordan v. Northrop Grumman Welfare Benefit,* 370 F.3d 869, 872 (9th Cir. 2004), *citing Harrison's Principles of Internal Medicine* 1903 (Kurt Isselbacher, et al., 9th ed. 1980). "The consensus construct of fibromyalgia identifies the syndrome as associated with generalized pain and multiple painful regions … sleep disturbance, fatigue, and stiffness are the central symptoms, though not all are present in all patients." *Jordan*, 370 F.3d at 872, *citing* Frederich Wolfe, et al., *The American College of Rheumatology 1990 Criteria for the Classification of Fibromyalgia*, 33 Arthritis and Rheumatism (No. 2) 160, 170 (February 1990).

Even if this Court were to accept plaintiff's assertion that her *entire* disability is caused by "Fibromyalgia Syndrome," her claim is still barred by a 24 month limitation. (AR 64). The Policy states:

> Monthly Benefits will be limited to a total of 24 months in the Insured's lifetime for all Total Disabilities caused or contributed to by musculoskeletal and connective tissue disorders of the neck and back, including any disease, disorder, sprain, and strain of the joints and adjacent muscles of the cervical, thoracic and lumbrosacral regions and their surrounding soft tissue.

(AR 22). The Policy identifies a number of conditions for which this limitation does not apply. (AR 22). Fibromyalgia is *not* listed among them.

Further demonstrating that benefits for Fibromyalgia are limited to 24 months is the "Self-Reported Conditions" language that appears in the same limitation. It states that benefits are limited to a maximum period of 24 months if the claim is caused or contributed to by "conditions which, when reported by the Insured's Physician, cannot be verified using generally accepted standard medical procedures and practices." (AR 22). The Policy identifies examples of such conditions as headaches, dizziness, fatigue, loss of energy, and pain. (AR 22).

By its very nature, Fibromyalgia can only be diagnosed through self-reports. *See Jordan*, 370 F.3d 869. "There are no laboratory tests for the presence or severity of fibromyalgia." *Jordan*, 370 F.3d at 872. The primary tool for diagnosing Fibromyalgia is a "tender points" test, which tests "eighteen fixed locations on the body that when pressed firmly cause the patient to flinch." *Jordan*, 370 F.3d at 872. A diagnosis of Fibromyalgia is based on "patient reports of pain in at least five parts of the body" and "reports of pain when at least 11 or 18 points cause pain when palpated by the examiners thumb." *Jordan*, 370 F.3d at 872. Although objective tests are administered to rule out other diseases, there are no objective tests to establish the presence or

absence of Fibromyalgia. *Jordan*, 370 F.3d at 872. Thus, without the patient's subjective response, which cannot be objectively confirmed, there can be no diagnosis of Fibromyalgia. Clearly, the limitation applies to such a condition. The question before the Court is not whether plaintiff is disabled. The only question is whether the conditions on which she bases her claim are subject to the various limitations identified above. Clearly they are. At the very least, it cannot be said that Reliance Standard's conclusions are arbitrary and capricious. Accordingly, defendant is entitled to judgment in its favor.

## VI. CONCLUSION

Plaintiff's claim for continued benefits was properly denied because she is not entitled to benefits beyond 24 months based on the condition on which she bases her claim, for the two independent reasons set forth above. Because the Plan's decision cannot be considered arbitrary and capricious, defendant is entitled to judgment in its favor.

DATED: January 17, 2008         HARRINGTON, FOXX, DUBROW & CANTER, LLP

                                By:  s/Kevin P. McNamara
                                     KEVIN P. McNAMARA
                                     Attorneys for Defendant DIONEX CORPORATION LONG TERM DISABILITY PLAN

HARRINGTON, FOXX, DUBROW & CANTER, LLP
1055 WEST SEVENTH STREET, 29TH FLOOR
LOS ANGELES, CALIFORNIA 90017-2547
TELEPHONE (213) 489-3222

F:\CASE\RAW.3122\PLEADINGS\MSJ P&A.wpd    -12-    CV 07-02839 CRB
MEMORANDUM OF IN POINTS & AUTHORITIES IN SUPPORT OF DIONEX CORPORATION'S MSJ

## TABLE OF CONTENTS

**PAGE NO.**

I. INTRODUCTION AND SUMMARY OF ARGUMENT .............. 1

II. STATEMENT OF FACTS ........................................ 2

    A. Plaintiff's Background ............................... 2

    B. Relevant Policy Provisions ............................ 2

    C. Claim History ...................................... 3

III. SUMMARY JUDGMENT STANDARD ............................. 5

IV. ERISA STANDARD OF REVIEW ................................ 5

V. RELIANCE STANDARD'S CLAIM DECISION WAS ENTIRELY REASONABLE AND NOT AN ABUSE OF DISCRETION ............ 7

    A. Mental or Nervous Disorders .......................... 8

    B. Fibromyalgia ..................................... 10

VI. CONCLUSION ............................................. 12

HARRINGTON, FOXX, DUBROW & CANTER, LLP
1055 WEST SEVENTH STREET, 29TH FLOOR
LOS ANGELES, CALIFORNIA 90017-2547
TELEPHONE (213) 489-3222

# TABLE OF AUTHORITIES

**PAGE NO.**

**CASES**

*Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 965 (9th Cir. 2006) . . . . . . . . 7

*Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986) . . . . . . . . . . . . . . . . . . . . 5

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986) . . . . . . . . . . . . . . . . . . . . 5

*Atwood v. Newmont Gold Co.*, 45 F.3d 1317 (9th Cir. 1995) . . . . . . . . . . . . . . . . 7

*Babikian v. Paul Revere Life Ins. Co.,* 63 F.3d 837, 840 (9th Cir. 1995) . . . . . . . . 10

*Bendixen v. Standard Ins. Co.*, 185 F.3d 939, 942 (9th Cir. 1999) . . . . . . . . . . 5,7

*Bendixen v. Standard Ins. Co.*, 185 F.3d 939, 944 (9th Cir. 1999) . . . . . . . . . . . . . 6

*Boyd v. Bell/Rozell NFL Players Retirement Plan*,
  410 F.3d 1173, 1178 (9th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986) . . . . . . . . . . . . . . . . . . . . 5

*Clark v. Wash. Teamsters Welfare Trust*, 8 F.3d 1429, 1432 (9th Cir. 1993) . . . . 6

*Jordan v. Northrop Grumman Welfare Benefit,* 370 F.3d 869,
  (9th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Jordan v. Northrop Grumman Welfare Benefit,* 370 F.3d 869,
  872 (9th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11, 12

*Jordan v. Northrop Grumman Corp. Welfare Benefit Plan*,
  370 F.3d 869, 875 (9th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Kearney v. Standard Ins. Co.*, 175 F.3d 1084, 1090 (9th Cir. 1999)(en banc) . . . . 5

*Martinez v. Pacific Gas & Elec. Co.*, No. 1:05-cv-00931,
  2006 WL 3349565 (E.D. Cal. Nov. 15, 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986) . . . . . . . . 5

*Michaels v. Equitable Life Assurance Society*, No. 04-cv-3250,
  2007 WL 3024571 (E.D. Pa. Oct. 15, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Padfield v. AIG Life Ins. Co.,* 290 F.3d 1121, 1125 (9th Cir. 2002) . . . . . . . . . . . 10

*Snow v. Standard Ins. Co.,* 87 F.3d 327, 331 (9th Cir. 1996) . . . . . . . . . . . . . . 7, 9

*Taft v. Equitable Life Assur. Soc'y*, 9 F.3d 1469, 1472 (9th Cir. 1993) . . . . . . . 6, 7

*Taft v. Equitable Life Assur. Soc'y*, 9 F.3d 1469, 1473 (9th Cir. 1993) . . . . . . . . 6

/ / /

**HARRINGTON, FOXX, DUBROW & CANTER, LLP**
1055 WEST SEVENTH STREET, 29TH FLOOR
LOS ANGELES, CALIFORNIA 90017-2547
TELEPHONE (213) 489-3222

**STATUTES**

Federal Rule of Civil Procedure 56(c) .................................................. 5

**MISCELLANEOUS**

Employee Retirement Income Security Act of 1974 (ERISA),
  29 U.S.C. §§ 1001, et seq. .................................................. 1

**HARRINGTON, FOXX, DUBROW & CANTER, LLP**
1055 WEST SEVENTH STREET, 29TH FLOOR
LOS ANGELES, CALIFORNIA 90017-2547
TELEPHONE (213) 489-3222