Richard Johnston - SBN 124524
131-A Stony Circle, Suite 500
Santa Rosa, California 95401
Telephone (707) 577-7422
Facsimile (707) 837-9532

Attorney for Plaintiff
Arminda Y. Madrid

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARMINDA Y. MADRID, | Case No. CV 07-02839 CRB |
| Plaintiff, | **MADRID'S OPPOSITION TO DIONEX LTD PLAN'S MOTION FOR SUMMARY JUDGMENT** |
| vs. | |
| DIONEX CORPORATION LONG TERM DISABILITY PLAN, | **Date:** February 29, 2008<br>**Time:** 10:00 a.m.<br>**Courtroom:** 8, 19th Floor |
| Defendant. | |

  Plaintiff Arminda Madrid submits this brief in opposition to Dionex Corporation Long Term Disability Plan's[1] summary judgment motion.

  RS' motion maintains first that judicial review of its determination to terminate Ms. Madrid's disability benefits should be highly deferential. *See* Memorandum of Points and Authorities in Support of Dionex Corporation Long Term Disability Plan's Motion for Summary Judgment (January 18, 2008) (hereafter "RS Motion") at 6:1- 7:4. RS does acknowledge that the standard of review is impacted by the fact it is a conflicted administrator because it both

---

[1] Because the LTD Plan is insured by a policy issued by Reliance Standard Life Insurance Company, and for purposes of consistency among her various briefs, Ms. Madrid refers to the moving defendant as "RS." *See* Memorandum of Points and Authorities Submitted by Madrid in Support of Motion for Summary Judgment under Rule 56 or, in the Alternative, for Judgment under Rule 52 (January 18, 2008) (hereafter "Madrid Motion") at 1:5-8.

MADRID'S OPPOSITION TO DIONEX LTD
PLAN'S SUMMARY JUDGMENT MOTION

funds benefits and makes eligibility decisions, *see id.* at 7:5-17, and, as discussed below, that impact is profound here.

Turning to the merits of its termination decision, RS argues first that Ms. Madrid's psychological diagnoses are subject to a policy provision limiting benefits to 24 months, *see id.* at 8:6 - 10:14, such that they "cannot be relied on by [Ms. Madrid] in support of her disability claim as she has already received 24 months of benefits related to them." *Id.* at 10:4-6. With this discrete proposition Ms. Madrid does not disagree, but given the manner in which RS adjudicated her disability claim the point is moot. RS determined not that she could not rely on her psychological diagnoses after 24 months, but that because she had psychological diagnoses she could not rely on anything else either. That is where RS ran afoul of both the law and the terms of its policy.

RS also argues that Ms. Madrid's fibromyalgia diagnosis is subject to a distinct 24-month limitation for "musculoskeletal and connective tissue disorders of the neck and back," *id.* at 11:1-12, as well as a similar policy limitation for "self-reported conditions." *Id.* at 11:13 - 12:3. First, because it did not base the termination of Ms. Madrid's benefits on the "self reported conditions" limitation, RS may not be heard to raise it now. At all events, neither argument can withstand scrutiny: the fibromyalgia diagnosis is subject to neither limitation, and if Ms. Madrid is disabled independently by fibromyalgia then she remains eligible for benefits. Notably, RS never reached the question of whether her fibromyalgia disables her, and its determination to terminate benefits after 24 months was therefore an abuse of discretion.

I.  Given RS' conflict of interest and its conduct in this and other matters, the court should view its determination to terminate benefits with significant skepticism

As RS acknowledges, in the case of a conflicted ERISA administrator exercising discretionary authority, "greater [judicial] skepticism is warranted when the structural conflict of interest is accompanied by shifting explanations for denial, evidence of malice, self-dealing, failure to adequately investigate or when the defendant fails to ask the plaintiff for necessary

---

MADRID'S OPPOSITION TO DIONEX LTD
PLAN'S SUMMARY JUDGMENT MOTION                2

evidence, or fails to credit a claimant's reliable evidence." RS Motion at 7:13-17.  In fact, for a great many reasons, RS' determination merits significant skepticism here: among other things, RS gave many shifting explanations for terminating benefits; it failed to adequately investigate the claim; it used a biased medical reviewer whose bias has been the subject of frequent judicial criticism; and it produced a materially incomplete administrative record.  *See* Madrid Motion at 19:9 - 21:13.  Deference to a conflicted administrator's decision varies significantly, *Saffon v. Wells Fargo & Co. Long Term Disability Plan,* - F.3d -, 2008 WL 80704, at *2 (9th Cir.), and here a very low level of deference is due, given the myriad instances of misfeasance on RS' part.  *See Saffon* at *3, *7 - *8; *Abatie v. Alta Life & Health Ins. Co.,* 458 F.3d 955, 968-969 (9th Cir. 2006); *cf. Prado v. Allied Domecq Spirits and Wine Group Disability Income Policy,* 2008 WL 191985, at *2 - *4 (N.D.Cal.).

II.  The policy limitation for mental and nervous disorders does not impact eligibility for benefits for disabilities caused by comorbid conditions

RS, in terminating Ms. Madrid's benefits, asserted that because her psychological condition "contributed" to her "status" she was forever ineligible for benefits after 24 months, regardless of the presence of another comorbid and independently disabling condition.  *See* Madrid Motion at 15:3-7; 18:9-16; 21:16-26.  In this RS violated both the terms of its policy and applicable law.  *See* Madrid Motion at 22:18 - 24:11.

On analysis, RS' argument to this court (as distinguished from its assertions in pre-litigation termination letters) is largely consonant with Ms. Madrid's position.  RS, apparently, does not now argue that the presence of a psychological condition renders irrelevant an independently disabling comorbid physical condition, but only the unremarkable proposition that benefits *for the psychological condition itself* are capped at 24 months.  *See* RS Motion at 10:3-6 ("whether plaintiff's symptoms of depression, anxiety and bipolar disorder were related to Fibromyalgia or entirely separate, they still cannot be relied on by plaintiff in support of her disability claim as she has already received 24 months of benefits related to them").  This, in

turn, is consistent with RS' position on this issue in distinct judicial proceedings. *See* Madrid Motion at 22:3-17.

RS' motion, in other passages, does suggest that it may persist in believing a psychological diagnosis forever forecloses benefits for an independently disabling condition. *See* RS Motion at 8:27-28 ("cannot be disputed that plaintiff's treatment has included psychotherapy and psychotropic medication"). If that is RS' intent, then its argument cannot survive scrutiny. In addition to the cases Ms. Madrid has already cited, *Henry v. Home Ins. Co.,* 907 F.Supp. 1392 (C.D.Cal. 1995), and *Sheehan v. Metropolitan Life Ins. Co.,* 368 F.Supp.2d 228 (S.D.N.Y. 2005), *see* Madrid Motion at 22:17 - 24:5, the cases cited by RS itself are either affirmatively contrary to its argument or entirely inapposite.

In *Michaels v. Equitable Life Assurance Society,* 2007 WL 3024571 (E.D.Pa.), *see* RS Motion at 9:4-8, Michaels did indeed have his benefits terminated after 24 months because of a policy limitation relating to mental or nervous conditions. But the court made it clear that, by establishing the presence of an independently disabling comorbid physical condition, Michaels would remain eligible for benefits:

> Because a period of total disability based on a disability arising from or on account of a condition related to a mental condition cannot extend beyond 24 months, though, Plaintiff would have only been entitled to recertification of the period of disability if he satisfied the "any occupation" definition based solely on his *physical* condition.

2007 WL 3024571 at *11 (internal punctuation omitted, emphasis in original).[2]

The other case RS cites – *Martinez v. Pacific Gas & Electric Co. Long Term Disability Plan*, 2006 WL 3349565 (E.D.Cal.) – is entirely inapposite. The issue there had nothing to do with whether an independently disabling comorbid condition might support continuing benefits. Rather, it was whether the sole disabling condition – bi-polar II depression – was *itself* a physical as opposed to mental condition because it was assertedly caused by a chemical

---

[2]*Michaels* is also distinguishable in that the court applied an extremely deferential standard of review: unfettered arbitrary and capricious, such that the termination of benefits was to be upheld unless it was "without reason, unsupported by substantial evidence, or erroneous as a matter of law." 2007 WL 3024571 at *8. Here, as discussed in the text *supra*, judicial review should be much more skeptical.

MADRID'S OPPOSITION TO DIONEX LTD
PLAN'S SUMMARY JUDGMENT MOTION            4

imbalance.  *See id.* at *3, *8.  Here, of course, Ms. Madrid makes no such argument respecting her psychological diagnoses, arguing that she suffers from an independently disabling comorbid physical condition – fibromyalgia.

III.  The policy limitation for musculoskeletal condition of the neck and back does not apply to a fibromyalgia diagnosis

RS argues that the fibromyalgia diagnosis is subject to a policy provision limiting benefits to 24 months for "musculoskeletal and connective disorders of the neck and back." RS Motion at 11:1-12.  Fibromyalgia, however, is not confined to the neck and back, but is exemplified by chronic pain throughout the body, multiple tender points, fatigue, stiffness, and sleep disturbance.  *See* Madrid Motion at 24:13 - 25:1.

At one point, RS' medical consultant, William Scott Hauptman, M.D., did opine that "fibromyalgia is a condition that is caused or contributed to by musculoskeletal and connective disorders of the neck and back." *See* Madrid Motion at 14:14-17.  This observation, however, is materially at odds with the policy provision in question.  The policy speaks in terms of *disabilities* which are caused or contributed to by *conditions* which are themselves disorders of the designated kind of the neck and back.  Thus, it does not connote that benefits are limited if the *condition* is "caused or contributed to by" neck and back symptomatology, but rather if it is *itself* "of the neck and back."  Dr. Hauptman's analysis vastly expands the reach of the limitation, by including within its sweep all conditions which may involve in any way the neck or back areas, regardless of how widespread their effects may be in the rest of the body. Fibromyalgia is one such condition which ought not be swept into the limitation: it is not "of the neck and back"; its effects are widespread, all over the body.

IV.  The policy limitation for "self-reported" conditions cannot be asserted now by RS because it was not a pre-litigation ground for termination, and does not apply to a fibromyalgia diagnosis

RS' final argument is that the policy's limitation of benefits to 24 months for "self-

---

MADRID'S OPPOSITION TO DIONEX LTD
PLAN'S SUMMARY JUDGMENT MOTION                5

1  reported" conditions applies to fibromyalgia.

2  This rationale, however, was not included in either of RS' ultimate termination letters.
3  Its December 2003 letter terminating benefits was limited to the "mental/nervous" limitation
4  and no other, *see* Madrid Motion at 16:7-13; and its August 2004 letter upholding that
5  termination was limited to mental/nervous, neck/back, and chronic fatigue limitations.  *See*
6  Madrid Motion at 18:5 - 19:5.  *See also* RS Motion at 4:4-26 (operative termination letters were
7  issued in December 2003 and August 2004).[3]

8  RS may not raise new issues during litigation that it failed to raise at the time it
9  terminated benefits prior to litigation.  In *Jebian v. Hewlett-Packard Co. Employee Benefits*
10 *Organization Income Protection Plan,* 349 F.3d 1098 (9th Cir. 2003), the court held when a
11 claim was "deemed denied" because a plan had failed to render a timely decision, a later
12 decision conveyed during litigation would not enjoy deferential review.  *Id.* at 1106.  To allow
13 plans to assert after-the-fact rationales, explained the court, "would allow claimants, who are
14 entitled to sue once a claim had been deemed denied, to be sandbagged by a rationale the
15 plan administrator adduces only after the suit has commenced."  *Id.* at 1104 (internal citation
16 and punctuation omitted).  The court likened its conclusion to "the general rule that an
17 agency's order must be upheld, if at all, on the same basis articulated in the order by the
18 agency itself, not a subsequent rationale articulated by counsel."  *Id.* at 1104-1105 (quoting
19 *Federal Power Comm'n v. Texaco, Inc.*, 417 U.S. 380, 397, 94 S.Ct. 2315, 41 L.Ed.2d 141
20 (1974)) (internal punctuation omitted).  *See also Marolt v. Alliant Techsystems, Inc.*, 146 F.3d
21 617, 620 (8th Cir. 1998), cited in support by the *Jebian* court, 349 F.3d at 1104; *Glista v.*
22 *UNUM Life Ins. Co. of America*, 378 F.3d 113, 128-129 (1st Cir. 2004); *Reich v. Ladish Co.,*
23 *Inc.,* 306 F.3d 519, 524 n.1 (7th Cir. 2002).

---

[3]RS claims in its moving papers that the August 2004 letter justified the termination of benefits by reference to the self-reported conditions limitation, RS Motion at 4:21-23, but that is erroneous.  The letter did mention in passing the limitation when it quoted from the policy in scattershot fashion, *see* AR 47, but when it came to explaining why benefits had been terminated the discussion does not mention the self-reported conditions limitation at all.  *See* AR 50-51 (discussion of only mental/nervous, neck/back, and chronic fatigue limitations).

MADRID'S OPPOSITION TO DIONEX LTD
PLAN'S SUMMARY JUDGMENT MOTION             6

The *Jebian* rule reflects controlling ERISA regulations, which require that plans describe the precise reasons for claim denial at the time they deny, or uphold denial of, claims. *See* 29 CFR §§2560.503-1(g)(1)(i) (plans must provide "specific reason or reasons" for claim denial); 2569.503-1(j)(1) (same regarding administrative appeals); *see also Saffon, supra,* 2008 WL 80704, at *5; *Booton v. Lockheed Med. Benefit Plan*, 110 F.3d 1461, 1463 (9th Cir. 1997). Claimants, then, are entitled to know all those reasons before having to decide whether to proceed to court; plans may not conjure additional reasons once they have been sued. RS' "self-reported conditions" argument should meet with the appropriate fate.[4]

The argument, at all events, is without merit. First, even Dr. Hauptman opined that fibromyalgia ought not be characterized as a self-reported condition. *See* Madrid Motion at 14:14-15. In this, at least, he was correct.

The RS policy defines a limited "self reported condition" as one "which, when reported by the Insured's Physician, cannot be verified using generally accepted standard medical procedures and practices." RS Motion at 3:16-19. Fibromyalgia, however, is susceptible to verification by precisely such procedures and practices:

> Self-reported conditions are specifically defined as those that are not verifiable using tests, procedures or clinical examinations standardly accepted in the practice of medicine. The eighteen point trigger test performed by Dr. Lipsmeyer qualifies as a clinical examination standardly accepted in the practice of medicine, and thus, Chronister's fibromyalgia is not subject to Unum's self-reported symptoms limitations. Our circuit recently joined the Seventh Circuit in recognizing that trigger-point test findings consistent with fibromyalgia constitute objective evidence of the disease. *Johnson v. Metro. Life Ins. Co.,* 437 F.3d 809 (8th Cir. 2006). *See also Brosnahan v. Barnhart,* 336 F.3d 671, 678 (8th Cir. 2003) ("Brosnahan's testimony and reports to the SSA are supported by objective medical evidence of fibromyalgia-consistent trigger-point findings..."); *Hawkins v. First Union Corp. Long-Term Disability Plan,* 326 F.3d 914, 919 (7th Cir. 2003) ("Pain often and in the case of fibromyalgia cannot be detected by laboratory tests. The disease itself can be diagnosed more or less objectively by the 18-

---

[4]*Jebian's* holding expressly pertains to the standard of review, not whether a rationale may be raised at all. But there the final determination by the plan administrator, albeit untimely, was issued within the context of concluding an administrative appeal. *See* 349 F.3d at 1102. Here, RS issued its final determination and had every opportunity to invoke any rationale it desired; it did not include the "self reported conditions" rationale. Unlike the situation in *Jebian,* then, the administrative appeal process was concluded with a substantive final letter from RS. Under the authority favorably discussed in *Jebian – Texaco* and *Marolt* – RS ought not be allowed to add a new rationale at this point, after it has issued its final determination on administrative appeal.

> point test ..."). Chronister's medical condition consequently does not rest primarily on self-reported symptoms.

*Chronister v. Baptist Health,* 442 F.3d 648, 656 (8th Cir. 2006) (internal punctuation omitted). Similarly here, the RS policy merely requires that a condition be susceptible to verification through "generally accepted standard medical procedures and practices" in order to avoid the "self-reported conditions" limitation. As the case law discussed above demonstrates, the procedures for establishing a fibromyalgia diagnosis easily qualify as such.

RS' citation to *Jordan v. Northrop Grumman Corp. Welfare Benefit Plan,* 370 F.3d 869, 872 (9th Cir. 2004), RS Motion at 11:20 - 12:3, changes none of that. There was no "self-reported conditions" limitation at issue in *Jordan*, and it did not discuss whether the medical procedures employed to diagnose fibromyalgia constitute generally accepted medical procedures and practices, so the case cannot reasonably be bootstrapped into a conclusion that fibromyalgia is a "self reported" condition for any and all purposes. Rather, applying the language of the RS policy in question, the "self-reported conditions" limitation is inapplicable, and Ms. Madrid's eligibility for disability benefits is not affected by that or any other rationale advanced here by RS.

Dated: February 8, 2008

                                                                          /s/
                                          Richard Johnston
                                          Attorney for Plaintiff
                                          Arminda Y. Madrid