Richard Johnston - SBN 124524
131-A Stony Circle, Suite 500
Santa Rosa, California 95401
Telephone (707) 577-7422
Facsimile (707) 837-9532

Attorney for Plaintiff
Arminda Y. Madrid

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARMINDA Y. MADRID,<br><br>　　　　Plaintiff,<br><br>　　vs.<br><br>DIONEX CORPORATION LONG TERM DISABILITY PLAN,<br><br>　　　　Defendant. | Case No. CV 07-02839 CRB<br><br>**MADRID'S REPLY TO DIONEX LTD PLAN'S OPPOSITION TO MADRID'S MOTION FOR SUMMARY JUDGMENT OR JUDGMENT UNDER RILE 52**<br><br>**Date:**　　February 29, 2008<br>**Time:**　　10:00 a.m.<br>**Courtroom:** 8, 19th Floor |

　　　In opposing Ms. Madrid's motion, defendant Dionex Corporation Long Term Disability Plan ("RS")[1] mischaracterizes many of Ms. Madrid's arguments. To the extent it does address the arguments actually advanced by Ms. Madrid, its arguments are without merit. The court should render judgment for Ms. Madrid. Failing that it should remand the matter to RS and order it to conduct the proper analysis.

---

[1] We refer to the moving defendant as "RS" because the Dionex LTD Plan was insured and administered by Reliance Standard Life Insurance Company, for all practical purposes the real party in interest. *See* Memorandum of Points and Authorities Submitted by Madrid in Support of Motion for Summary Judgment under Rule 56 or, in the Alternative, for Judgment under Rule 52 (January 18, 2008) (hereafter "Madrid Motion") at 1:5-8; Madrid's Opposition to Dionex LTD Plan's Motion for Summary Judgment (February 8, 2008) (hereafter "Madrid Opposition") at 1, n.1.

---
MADRID'S REPLY TO OPPOSITION TO
SUMMARY JUDGMENT MOTION

I. The court should afford RS's determination to terminate benefits scant deference

In her moving papers Ms. Madrid established that several factors called for significant skepticism on the court's part in evaluating RS' termination of Ms. Madrid's disability benefits.

**1.** RS gave differing reasons for its determination, asserting various permutations (but never the same permutation twice) of reasons: Ms. Madrid was not disabled; Ms. Madrid was not under the regular and continuous care of a physician; her condition was subject to the RS policy's pre-existing conditions exclusion; her claim was limited by a provision relating to mental or nervous disorders; her claim was limited by a provision relating to self-reported conditions; her claim was limited by a provision relating to musculoskeletal and connective disorders of the neck and back; and her claim was limited by a provision relating to chronic fatigue syndrome. *See* Madrid Motion at 5, n.2; and generally Madrid Motion at 5:8 - 9:3; 14:21 - 19:4. An administrator giving inconsistent reasons for denial is one factor calling for more skeptical judicial review. *See* Madrid Motion at 20:3-4; *Saffon v. Wells Fargo & Co. Long Term Disability Plan,* 511 F.3d 1206, 1211 (9th Cir. 2008) (quoting *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 968 (9th Cir. 2006)).

RS counters that its various explanations were not inconsistent at all, and indeed that Ms. Madrid's "own descriptions show that the policy limitations were consistently raised as the basis for denial." Memorandum of Points and Authorities in Opposition to Plaintiff's Motion for Summary Judgment (February 8, 2008) (hereafter "RS Opposition") at 3:16-17.[2]

A cursory review of RS's correspondence, however, indicates that other than consistently denying or terminating Ms. Madrid's benefits the communications were not consistent at all. Consider, for example, the policy provision relating to self-reported

---

[2] RS also describes Ms. Madrid's argument as "an attempt to falsely portray Reliance Standard as constantly 'denying' her claim just to 'line its own pockets.'" RS Opposition at 3:14-15. Ms. Madrid did not argue that RS was "trying to line its own pockets" (although that is the practical result of its conduct in this case, whether by design or merely in effect). Rather she argued, based on a law review article cited with approval by the *Saffon* court, that deferential review should be tempered because a concern exists in the "ERISA-plan world" generally that self-interested administrators might act in such a manner. *See* Madrid Motion at 19:16 - 20:2.

MADRID'S REPLY TO OPPOSITION TO
SUMMARY JUDGMENT MOTION          2

conditions. It is cited as a ground for denial or termination in RS letters dated December 13, 2002, *see* Madrid Motion at 8:24 - 9:3; April 4, 2003, *see id.* at 9:9-16; and July 14, 2003, *see id.* at 14:22 - 15:2; but omitted from letters dated July 17, 2002, *see id.* at 7:4-7; November 8, 2002, *see id.* at 8:11-13; December 29, 2003, *see id.* at 16:7-13; and August 23, 2004. *See id.* at 18:5 - 19:4. Not much consistency there.[3]

At all events this is a factor not so much because any particular ground for denial or termination may be involved but because a scattershot approach to grounds for denial or termination is indicative of a desire to find a way – any way – to deny or terminate benefits, as opposed to following the facts wherever they lead and adjudicating a claim accordingly. That is why shifting grounds for claim denial are important: they impact a carrier's credibility when considering its determination to deny benefits. *See Abatie*, *supra,* 458 F.3d at 969.

RS also argues that the inconsistency of its contentions is somehow ameliorated because not "all of the letters referenced by plaintiff [were] claim denials as plaintiff would have this Court believe." RS Opposition at 3:18-19. It is true that not all of the letters in question can be strictly categorized as "denials," and Ms. Madrid has not suggested otherwise. But they do all contain assertions by RS that Ms. Madrid's claim is either not payable at all or is limited by one or more policy provisions (albeit different ones in each letter). A carrier is not somehow excused from its obligation to communicate in a straightforward manner with its insured because some particular letter may not technically qualify as a "denial"; ERISA administrators generally are required to engage in a "meaningful dialog" with claimants and communicate with them "in a manner calculated to be understood by the claimant." 29 CFR §2560.503-1(g); *see Saffon,* 511 F.3d at 1213. The explanations contained within RS' correspondence were inconsistent, and that fact is not ameliorated merely because some of that correspondence was something other than a strict "denial."

**2.** Ms. Madrid noted RS' persistent and myopic (and ultimately unfulfilled) desire to

---

[3] Nor indeed is there much consistency with regard to any particular ground for termination asserted by RS. *See, e.g.,* Madrid Motion at 5, n.2.

MADRID'S REPLY TO OPPOSITION TO
SUMMARY JUDGMENT MOTION                             3

1  shoehorn Ms. Madrid's claim into the pre-existing condition exclusion in its policy. *See* Madrid
2  Motion at 21:8-9; *see also id.* at 6:10-15; 13:14-16; 15:17-18; 16:2-3. Such single-minded
3  diligence in pursuing an issue which would allow for outright denial of benefits, especially after
4  an exhaustive investigation has revealed the inapplicability of the exclusion, is evidence of an
5  unduly adversarial mindset. *Cf. Friedrich v. Intel Corp.*, 181 F.3d 1105, 1110 (9th Cir. 1999)
6  (LTD Plan administrator "administered Friedrich's claim as an adversary bent on denying his
7  claim and oblivious to her fiduciary obligations as administrator of the LTD Plan") (internal
8  punctuation omitted).

9  RS described Ms. Madrid's position on this point thusly: "Reliance Standard improperly
10 tried to force her claim into the Plan's 24 month limit on benefits for mental and nervous
11 disorders." RS Opposition at 4:4-5. Ms. Madrid, however, has not quibbled with the
12 invocation of that provision, only its effects when applied to Ms. Madrid's comorbid physical
13 condition. *See* Madrid Motion at 21:14 - 24:11. Thus, the argument RS means to attack here,
14 involving its continuing interest in the pre-existing condition exclusion after that exclusion had
15 already been investigated and found to be inapplicable, remains unaddressed by RS.

16 **3.** Ms. Madrid argued that RS' incomplete investigation, evidenced by RS' lack of
17 interest in materials its own medical consultant had indicated were important to an intelligent
18 decision on her claim, warranted greater judicial skepticism. *See* Madrid Motion at 20:12-19;
19 *Saffon,* 511 F.3d at 1211. RS' rejoinder is that "many courts have held that a request by a
20 plan for an independent review is evidence of a *good faith* review and the absence of a conflict
21 of interest." RS Opposition at 5:15-17 (emphasis in original).

22 Ms. Madrid has not argued, however, that RS failed to adequately investigate her claim
23 because it failed to engage the services of medical reviewers. She has argued that its
24 investigation was inadequate because when one of those medical reviewers indicated that
25 further analysis of medical data was advisable, *see* Madrid Motion at 12:15 - 13:2, that
26 analysis was never undertaken by RS. *See id.* at 15:23 - 16:7. This point too remains
27 unaddressed by RS.

28 _____

MADRID'S REPLY TO OPPOSITION TO
SUMMARY JUDGMENT MOTION                          4

**4.** Ms. Madrid noted that, in bestowing upon itself discretionary authority, RS acted in a manner antithetical to the fiduciary responsibilities it was about to undertake, and pursuant to the Restatement of Trusts that is a factor calling for judicial skepticism.  *See* Madrid Motion at 19, n.8.  According to RS, with this discussion she "questions the validity of that grant."  RS Opposition at 2:18-19.

But Ms. Madrid does not call into question the "validity" of the grant; she merely notes that it is there as a function of RS' own self-serving conduct, not as a function of the intent of the trustor as in a classic trust.  The "nature of the power" is one of the factors discussed in the Restatement, which in turn is the source of much of the analysis the court is to undertake.  *Saffon, supra,* 511 F.3d at 1211.  The court should take into account the "nature of the power" here, and consider that it exists in the first place only because RS unilaterally inserted it into its insurance policy for patently self-serving reasons.  RS' comments on this point are entirely inapposite to Ms. Madrid's argument.

**5.** Ms. Madrid argued several other factors calling for skeptical judicial review.  Among them were RS' conscious denial of meritorious claims, and its response to repeated judicial criticisms of its medical reviewer's bias (not to arrange for unbiased reviews, but to collude with the reviewer to soft-peddle evidence of that bias).  *See* Madrid Motion at 12:6-13; 20:20 - 21:2.  Also mentioned by Ms. Madrid was its production of a Curriculum Vitae for another medical reviewer which omitted quite material information about the reviewer's background, *see id.* at 17:3-9; 21:4-5; as well as the material gaps in the information about medical reviews performed by and on behalf of RS.  *See id.* at 21:9-11.  RS has not addressed any of these points in its opposition brief.

Given all the foregoing, as Ms. Madrid argued in her moving papers, the court should review RS' termination of her benefits with significant skepticism.

//

//

//

---

MADRID'S REPLY TO OPPOSITION TO
SUMMARY JUDGMENT MOTION                               5

II. RS' termination letters asserted that the presence of a mental or nervous condition rendered irrelevant any physical disability; RS now disavows that contention

In addressing the merits of its decision to terminate Ms. Madrid's benefits, RS now asserts it "is *not* saying that a claimant with a physical disability is not entitled to benefits if they also have a mental or nervous disorder." RS Opposition at 7:6-8 (emphasis in original).

Fair enough. But that necessarily means the position RS took prior to litigation is now acknowledged by RS to be wrong. In its termination letters, RS expressly stated benefits were not payable because of the mental/nervous limitation, and that was not because there was no other physical condition which might be disabling, but because "While you assert your mental health diagnoses are not your primary disabling condition they clearly contribute to your status. The Policy specifically limits benefits for conditions caused by or *contributed to by mental or nervous disorders* (emphasis added), and your eligibility for payment of LTD benefits under this provision terminated on 11/28/03." Madrid Motion at 18:12-16. Thus, because Ms. Madrid's "mental health diagnoses" contributed to something called her "status," she was ineligible for benefits after 24 months. That, of course, is impossible to square with what RS now says its view is.

But at least we now have agreement between the parties: if Ms. Madrid is disabled by a physical condition, then the fact her "status" includes a "mental health diagnosis" is no impediment to her continuing eligibility for benefits.

We are left, then, with RS' argument that distinct policy limitations squelch Ms. Madrid's continuing eligibility for benefits.

III. Neither the "self-reported conditions" limitation nor the "neck and back" limitation renders Ms. Madrid ineligible for continuing benefits

RS argues that Ms. Madrid's fibromyalgia-based physical disability is subject to policy limitations pertaining to self-reported conditions and to musculoskeletal or connective tissue disorders of the neck and back. Inasmuch as she has already addressed these points, *see* Madrid Opposition at 5:5-23; 7:9 - 8:16, Ms. Madrid will not undertake a substantive discussion

---

MADRID'S REPLY TO OPPOSITION TO
SUMMARY JUDGMENT MOTION              6

here. It is important to note, however, that the self-reported condition provision was not a basis for RS's ultimate determination, and therefore RS ought not be heard to argue it now in any case. *See id.* at 6:2 - 7:8.

RS' current argument on these points overlooks a bedrock principle of ERISA plan interpretation. That is that an ERISA plan is to be interpreted by construing ambiguous terms in favor of the claimant and against the insurer, and in a manner protective of the reasonable expectations of the claimant. *See* Madrid Motion at 22:17-24. RS' analysis turns this principle on its head, as the only way it can arrive at the conclusions it does is to interpret the various terms in question in its own favor and against Ms. Madrid.

IV. The record includes evidence from Ms. Madrid's medical providers that she is disabled as a function of her fibromyalgia

RS argues that Ms. Madrid can adduce no evidence that she is disabled as a function of her fibromyalgia. RS Opposition at 7:9-11. Of course, the record is not as developed as it might be in that regard because RS never looked into the question prior to litigation, satisfying itself with a cursory review of policy limitations and ultimately concluding that it didn't matter whether Ms. Madrid was disabled from fibromyalgia or not. Even at that, however, the record does include significant evidence that Ms. Madrid is indeed disabled from fibromyalgia.

Ms. Madrid's medical providers have confirmed both diagnosis of fibromyalgia and the condition's effects on Ms. Madrid. Her primary treating physician, Seema Rikhy, M.D., has consistently indicated, for example, that Ms. Madrid was having a lot of pain in her neck and bilateral shoulder regions, AR 584; that she was having a lot of pain all over her body, AR 583; that her muscles were hurting, AR 631; that she had aches and pains all over her body, AR 632; that she was in a lot of pain and got fatigued easily, AR 233; and that she had tried to return to work briefly but could not due to pain. AR 635. In her physician's statement Dr. Rikhy expressly stated Ms. Madrid had constant pain all over her body, was easily fatigued and had poor endurance, and had trigger point pain. AR 84-85.

1    Rajiv Dixit, M.D., Ms. Madrid's rheumatologist, confirmed the fibromyalgia diagnosis as
well, following a full history and physical examination.  AR 71.  He confirmed as well that Ms.
Madrid was experiencing chronic widespread pain, AR 599, and that she hurt all over.  AR
598.

   Therefore, Ms. Madrid's medical providers confirmed her diagnosis and attributed to
that diagnosis significant and disabling pain.  There is significant evidence, therefore, that Ms.
Madrid is indeed disabled as a function of fibromyalgia.

V.   At a minimum the court should remand the matter to RS so it can make a determination now on the question it failed to consider previously: does Ms. Madrid's fibromyalgia disable her?

   As discussed previously, because it misconstrued the effect and applicability of the
various policy limitations it invoked from time to time, RS never did make any ultimate
determination as to whether Ms. Madrid's fibromyalgia disabled her: it decided it didn't matter,
because it determined (erroneously) that her claim was limited to 24 months in any case.
Therefore, if judgment is not to be rendered in Ms. Madrid's favor, at a minimum the court
should remand this matter back to RS and order it to consider the question whether Ms.
Madrid is disabled on account of fibromyalgia.  *See Saffle v. Sierra Pacific Power Co.
Bargaining Unit Long Term Disability Income Plan,* 85 F.3d 455, 461 (9th Cir. 1996) ("remand
for reevaluation of the merits of a claim is the correct course to follow when an ERISA plan
administrator, with discretion to apply a plan, has misconstrued the Plan and applied a wrong
standard to a benefits determination").  In connection with any such remand, the court should
retain jurisdiction to consider Ms. Madrid's motion for interim attorney fees under 29 USC
§1132(g) and case law including *Kayes v. Pacific Lumber Co.*, 51 F.3d 1449, 1468-1469 (9th
Cir. 1995), *White v. Jacobs Engineering Group Long Term Disability Benefit Plan*, 896 F.2d
344, 352 (9th Cir. 1990), and *Mardirossian v. Guardian Life Ins. Co. of America,* 457 F.Supp.2d
1038, 1042-1043 (C.D.Cal. 2006).

MADRID'S REPLY TO OPPOSITION TO
SUMMARY JUDGMENT MOTION                    8

Based on all the foregoing, Ms. Madrid's motion should be granted in all respects, and RS' competing motion denied.

Dated: February 15, 2008

                                         /s/
                              Richard Johnston
                              Attorney for Plaintiff
                              Arminda Y. Madrid